# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF INDIANA
# INDIANAPOLIS DIVISION

| | |
|---|---|
| BANC OF AMERICA LEASING & CAPITAL, LLC, a Delaware limited liability company, | )<br>)<br>) |
| | ) Civil Action No. |
| Plaintiff, | ) |
| | ) **VERIFIED COMPLAINT** |
| v. | ) |
| | ) |
| SCALABLE LABS INC., a Delaware corporation, as successor by merger to ooShirts, Inc., a California corporation, | )<br>)<br>) |
| | ) |
| Defendant. | ) |

**VERIFIED COMPLAINT FOR (I) BREACH OF CONTRACT, (II) FORECLOSURE OF SECURITY INTEREST, (III) REPLEVIN, (IV) CONVERSION, (V) UNJUST ENRICHMENT AND (VI) MONEY LENT**

Plaintiff, BANC OF AMERICA LEASING & CAPITAL, LLC, by and through its undersigned counsel, and for causes of action against Scalable Labs Inc., as successor by merger to ooShirts Inc., a California corporation ("***Borrower***" or "***Defendant***"), hereby alleges as follows:

JURISDICTION AND VENUE

1. This Court has jurisdiction pursuant to 28 U.S.C. § 1332(a) in that the amount in controversy is in excess of $75,000, exclusive of interest and costs, and there is diversity between the parties.

2. Venue is proper pursuant to 28 U.S.C. § 1391(a) in that the principal place of business of defendant is located in the Southern District of Indiana, specifically Marion County, the collateral which is a subject matter of this action is located in the Southern District of Indiana,

1

specifically Marion County, and the principal place of business of the plaintiff is located in North Carolina.

## THE PARTIES

3. Plaintiff Banc of America Leasing & Capital, LLC ("**Lender**") is a limited liability company formed under the laws of the State of Delaware, whose sole member is Bank of America, N.A., a national banking association chartered under the laws of the United States of America, with its main office and principal place of business located in Charlotte, North Carolina as designated in its Articles of Association and, as such, Lender is a citizen of the State of North Carolina for diversity jurisdiction purposes by virtue of 28 U.S.C. § 1348.

4. Upon information and belief, Scalable Labs, Inc. is a Delaware corporation which conducts business within the State of Indiana, with its chief executive offices located at 2900 North Shadeland Avenue, Suite B1, Indianapolis (Marion County), Indiana 46226, and as such, is a citizen of Indiana for diversity jurisdiction.

5. Upon information and belief, Scalable Labs, Inc. is the successor by merger to ooShirts Inc., a California corporation ("**ooShirts CA**"), which merged with and into ooShirts Inc., a Delaware corporation ("**ooShirts DE**"), as of August 10, 2022, and filed notice of this change with the California Secretary of State on October 19, 2022.

6. As of November 7, 2022, ooShirts DE changed its name to Scalable Labs Inc. ("**Scalable Labs**"). Scalable Labs filed notice of this change of name with the Delaware Secretary of State on December 6, 2022.

7. OoShirts CA never provided Lender with notice of its merger with and into ooShirts DE or the subsequent change of ooShirts DE's name to Scalable Labs, Inc. and Lender only

discovered this information on December 8, 2022, as it was preparing to file an action against its original borrower, ooShirts CA, in California.

## NATURE OF THE ACTION

8.      This is an action by Lender as a commercial lender (a) to enforce Lender's rights in connection with a certain loan agreement between Lender and Borrower, pursuant to which Lender extended an equipment loan to Borrower in the original principal amount of $5,000,000.00, of which the principal sum of $2,759,537.16 (as of January 20, 2023) remains unpaid and due (together, the "***Loan***"), (b) to enter a money judgment against Borrower for all of the indebtedness owing from Borrower to Lender in connection the Loan, and (c) to enforce Lender's rights in certain personal property owned by Borrower, pledged as security for the Loan.

## FACTS COMMON TO ALL COUNTS

A.   The Loan

9.      On or about November 12, 2019, Lender and Borrower entered into a certain Master Loan and Security Agreement Number 48346-70000 (as amended, supplemented, restated, extended and/or renewed, the "***Loan Agreement***").  (A true and correct copy of the Loan Agreement is attached hereto as **Exhibit "1"**.)

10.     Pursuant to the Loan Agreement there is due and owing to Lender (a) the principal sum of $2,759,537.16 (as of January 20, 2022), (b) all contract interest which has accrued and not been paid, (c) all default interest which has accrued and not been paid, (d) all attorneys' fees and costs which have accrued and not been paid, and (e) all other fees and charges due and payable to Lender pursuant to the Loan Agreement and any related agreements, which have accrued and not been paid (collectively, together with all contract interest, default interest, attorneys' fees and

costs, and other fees and charges accruing but not paid during the prosecution of this action, the "*Indebtedness*").

B.     The Equipment Security Note and Collateral.

11.    The Loan is further evidenced by a certain Equipment Security Note Number 001 between Borrower and Lender dated as of November 12, 2019 ("*Note No. 1*"), as amended by a certain Supplement No. 001 to Equipment Security Note No. 001 to Master Loan and Security Agreement No. 48346-70000 (Substitution of Collateral) dated as of June 23, 2021 ("*Supp. No. 1*" and, together with Note No. 1, the "*Note*").  (True and correct copies of Note No. 1 and Supp. No. 1 are annexed hereto respectively as **Exhibit "2"** (Note No. 1) and **Exhibit "3"** (Supp. No. 1).)

12.    Pursuant to the Note, Borrower granted Lender a security interest in various embroidery machines and textile printers identified by model, serial number and location in Supp. No. 1 (collectively, the "*Equipment*").  (Exh. 3 at pp. 2 & 4-9.)

13.    The Loan Agreement, which is incorporated into the Note, also granted Lender a security interest on the follow collateral (together with the Equipment, the "*Collateral*"):

> "(i) all parts, attachments, accessories and accessions to, substitutions, and replacements for, each item of Equipment; (ii) all accounts, chattel paper, and general intangibles arising from or related to any sale, lease, rental or other disposition of any Equipment to third parties, or otherwise resulting from the possession, use or operation of any Equipment by third parties, including instruments, investment property, deposit accounts, letter of credit rights, and supporting obligations arising thereunder or in connection therewith; (iii) all insurance, warranty and other claims against third parties with respect to any Equipment; (iv) all software and other intellectual property rights used in connection therewith; (v) proceeds of all of the foregoing, including insurance proceeds and any proceeds in the form of goods, accounts, chattel paper, documents, instruments, general intangibles, investment property, deposit accounts, letter of credit rights and supporting obligations; and (vi) all books and records regarding the foregoing, in each case, now existing or hereafter arising …."

(Exh. 1 at § 1, p. 2).

14.    To perfect its interests in the Collateral, and in order to notify others of its interests in and to that Collateral, Lender filed (a) an initial UCC-1 Financing Statement with the Secretary

of State, State of California (the "*CA Recording Office*") on November 14, 2019, under File No. 197746718393 (the "*CA Financing Statement*"), (b) a UCC Financing Statement Amendment with the CA Recording Office on May 26, 2022 under File No. U220197336029 (the "*CA Amendment*"), and (c) a UCC Financing Statement with the Secretary of State of Delaware (the "*DE Recording Office*") on January 4, 2023, Filing No. 2023 0073584 (the "*DE Financing Statement*" and, together with the CA Financing Statement and the CA Amendment, the "*Financing Statements*").  (True and correct copies of the CA Financing Statement, the CA Amendment and the DE Financing Statement are annexed hereto respectively as **Exhibit "4"** (CA Financing Statement), **Exhibit "5"** (CA Amendment), and **Exhibit "6"** (DE Financing Statement).)

15. The Loan Agreement and the Note and all other documents related to the Loan shall be collectively referred to as the "*Loan Documents*."

16. Lender is the present holder of the Loan Documents.

17. Scalable Labs, Inc. f/k/a ooShirts DE, as successor by merger to ooShirts CA remains liable for all Indebtedness and other obligations arising under the Loan Documents.

C. <u>The Initial Defaults</u>.

18. The Note required Borrower to make monthly payments of principal and interest on the fourteenth day of each month in the amount of $89,832.12.  (Exh. 2 at § 2, pp. 2-3.)

19. The Loan Agreement provided that it would be an Event of Default if Borrower "fails to pay any Payments or other amounts owing under any Equipment Note within 10 days of its due date." (Exh. 1 at § 10(1), p. 4).

20. Borrower failed to timely make the monthly payments due on March 14, 2022 and April 14, 2022.

21. By letter dated May 13, 2022 (the "*Default Notice*"), Lender notified Borrower that it had failed to timely make the installment payment due on March 14, 2022, and had not made the installment payment due on April 14, 2022 (the "*Initial Payment Defaults*").  (A true and correct copy of the Default Notice is annexed hereto as **Exhibit "7"**.)

22. Lender did not receive the installment due on March 14, 2022 until May 12, 2022.

23. Borrower never fully paid the installment due on April 14, 2022; instead Borrower paid only the accrued interest and that was not received until July 29, 2022.

24. The Default Notice further advised Borrower that Borrower's failure to remit the May 14, 2022 installment payment on or before May 25, 2022, and Borrower's failure to timely remit any other payments when due would be a further event of default. (Ex. 7 at pp. 2-3.)

25. Despite numerous efforts to reach terms for a forbearance agreement, Borrower and Lender never agreed to, nor executed, a forbearance agreement.

26. On July 29, 2022, Borrower made an interest only payment of $27,549.36 (covering four months of accrued interest for April through July 2022 at $6,887.34 per month), but failed to make the principal portion of the monthly payments due for any of those four months.

27. On September 14, 2022, Borrower made an interest only payment of $6,887.34 (covering accrued interest for August 2022), but failed to make the principal portion of the monthly payment due on August 14, 2022.

D. The Acceleration and Demand.

28. In addition to failing to make the full principal and interest payments when due over six months, as set forth above (supra ¶¶ 18-23), Borrower failed to make the principal and interest  payment due on September 14, 2022, on or before September 24, 2022 (the "*September Payment Default*").

6

29. By letter dated October 6, 2022 (the "***Acceleration and Demand Letter***"), Lender notified Borrower of the September Payment Default, reiterated the Initial Payment Defaults, and advised that Borrower had failed to make full and timely payments for May through August 2022 (the "***Interim Payment Defaults***"). (A true and correct copy of the Acceleration and Demand Letter is annexed hereto as **Exhibit "8"**.)

30. As a result, in the Acceleration and Demand Letter, Lender accelerated all amounts due pursuant to the Loan Agreement and the Note and demanded payment of the full amount of the Indebtedness on or before October 17, 2022.

31. Borrower did not pay the full, accelerated balance of the Loan on or before October 17, 2022.

32. Borrower's failure (a) to make full and timely payments of principal and interest due under the Note in March, April, May, June, July and August 2022, (b) to make the payment of principal and interest due under the Note on September 14, 2022, within ten (10) days of its due date, and (c) to pay the accelerated Indebtedness in full on or before October 17, 2022, each constitutes an Event of Default under the Note and Loan Agreement (the "***Payment Defaults***"). (Exh. 1 at § 10(1), p. 4.)

33. Borrower has not made any payments to Lender since the Acceleration and Demand Letter and the full Indebtedness currently is due from Borrower to Lender.

E. <u>The Demand for Turnover of the Collateral</u>.

34. Among the remedies available to Lender pursuant to the Loan Agreement, is the right to obtain possession of the Equipment and the other Collateral upon an event of default:

> "Upon the occurrence of an Event of Default, Lender may, in its discretion, exercise one or more of the following non-exclusive remedies with respect to any or all Equipment Notes or Equipment … (2) cause Borrower to promptly discontinue use of or disable any Equipment, and, at Borrower's expense, have the Equipment assembled, prepared for

7

shipment (together with all related manuals, documents and records, and any other Collateral), and either surrendered to Lender in place or shipped (freight and insurance pre-paid) to such location as Lender may designate with the 48 contiguous United States, in the condition required under Section 4 hereof, qualified for the manufacturer's (or its authorized representative's) then-available service contract or warranty, and able to be put into immediate service and to perform at manufacturer's rated levels (if any) … [and] (4) with or without court order, enter upon the premises where Equipment is located and repossess and remove the same, all without liability for damage to such premises or by reason of such repossession…."

(Exh. 1, at § 11(a), p. 4.)

35. Pursuant to section 11(a)(2) and 11(a)(4) of the Loan Agreement, the Acceleration and Demand Letter demanded that Borrower turnover the Equipment and the other Collateral to Lender on or before October 19, 2022 (the "***Turnover Date***"), if it did not pay the full amount of the Indebtedness on or before October 17, 2022. (Exh. 8 at p. 3.)

36. Despite written notice and demand for turnover, Borrower has not turned over the Collateral to Lender and Borrower continues to withhold the Collateral in violation of Lender's right to immediate and exclusive possession of it.

F. <u>The Additional Default</u>.

37. The Loan Agreement further provided that it would be an Event of Default if Borrower "enters into any merger or consolidation with … any entity …." (Exh. 1 at § 10(5)(w), p. 4.)

38. By merging with and into ooShirts DE, ooShirts CA violated the Loan Agreement which constitutes a further event of default under the Loan Agreement (the "***Merger Default***").

## COUNT I
## BREACH OF CONTRACT - NOTE

39. Lender refers to and re-alleges each of the foregoing allegations of this Verified Complaint as if more fully set forth herein.

40. As set forth above, Borrower defaulted under the terms of the Loan Agreement and the Note.

41. As a result of the Payment Defaults and the Merger Default (collectively, the "*Defaults*"), Lender is entitled to immediate payment in full of all sums due under the Note and the Loan Agreement.

42. Lender has performed all of its obligations under the Loan Documents.

43. The Loan Agreement provides that in the event of a default thereunder, Borrower would be liable for all legal fees, costs and expenses incurred by Lender in connection with the enforcement of its remedies against Borrower. (Exh. 1 at § 11(6), p. 4.)

44. There is due and owing to Lender pursuant to the Loan Agreement the principal sum of $2,759,537.16 due on the Note (as of December 5, 2022), plus accrued and accruing interest, default rate interest (from and after October 6, 2022, the date of the Acceleration and Demand Letter), pre-payment penalties, termination fees, late charges, contractual costs, attorneys' fees and all other charges due to Lender pursuant to the Loan Documents.

45. Accordingly, Lender is entitled to a money judgment against Borrower in the principal sum of due on the Note, plus accrued and accruing interest, default rate interest (from and after October 6, 2022, the date of the Acceleration and Demand Letter), pre-payment penalties, termination fees, late charges, contractual costs, attorneys' fees and all other charges due to Lender under the Loan Documents.

## COUNT II
## FORECLOSURE OF SECURITY INTEREST

46. Lender refers to and re-alleges each of the foregoing allegations of this Verified Complaint as if more fully set forth herein.

47. As a result of the Defaults, Lender is entitled to, *inter alia*: (a) take possession of the Collateral; (b) require Borrower to assemble the Collateral and make the Collateral available to Lender at a place designated by Lender; and/or, (c) dispose of the Collateral by selling or leasing same, and apply the proceeds thereof to the obligations of Borrower to Lender under the Note. (Exh. 1 at §§ 11(a)(2), 11(a)(4) and 11(a)(5), p. 4.)

48. Accordingly, Lender is entitled to a judgment foreclosing upon its security interest in the Collateral, awarding to Lender immediate possession of the Collateral, and permitting Lender to dispose of same and apply the proceeds thereof to the obligations and liabilities of Borrower in accordance with Article Nine of the Uniform Commercial Code as enacted in Indiana, *Burns Indiana Code Ann. §§ 26-1-9.1-101 et seq*. (the "***UCC***").

## COUNT III
## REPLEVIN

49. Lender refers to and re-alleges each of the foregoing allegations of this Verified Complaint as if more fully set forth herein.

50. Lender is, and at all times herein mentioned, was the holder of a security interest in the Collateral.

51. As a result of the Defaults, pursuant to the Note and the Loan Agreement, Lender is entitled to immediate and exclusive possession of the Collateral, including the Equipment. (Exh. 1 at §§ 11(a)(2) and 11(a)(4), p. 4.)

52. In the Turnover Letter, Lender demanded that Borrower turnover the Collateral to Lender or its agents as of the Turnover Date.

53. Borrower has failed and refused to turn over the Collateral since the Turnover Date.

54. Upon information and belief, the Collateral has not been taken for tax, assessment, or fine pursuant to statute or seized under an execution or attachment against property of Defendant.

55. During, and as a proximate result of Borrower's wrongful possession and detention of the Collateral, Lender suffered the loss of the use and enjoyment of the Collateral.

56. Lender has suffered damages in an amount to be determined at trial, including but not limited to (a) the reasonable rental value of the Equipment, (b) the amounts received by Borrower for the use, sale or lease of the Equipment from and after the Turnover Date to the date the Equipment is delivered to Lender; and (c) the deterioration of, damage to, and depreciation of the Equipment from and after the Turnover Date to the date the Equipment is delivered to Lender.

57. In wrongfully possessing and detaining the Equipment, Borrower acted willfully, maliciously, and in wanton disregard of Lender's rights.  Therefore, Lender seeks exemplary and punitive damages from Borrower in an amount to be determined according to the proofs.

58. Lender is entitled to a writ of replevin pursuant to *Burns Ind. Code Ann. § 32-35-2-1, et seq*.

## COUNT IV
## CONVERSION

59. Lender refers to and re-alleges each of the foregoing allegations of this Verified Complaint as if more fully set forth herein.

60. As set forth above, Borrower has defaulted under the Loan Agreement, has failed to make payment to Lender of the sums due to it, and has refused and neglected, and continues to refuse and neglect, to return possession of the Collateral to Lender.

61. Upon information and belief, Borrower has continued to use the Collateral in its business despite the Defaults, despite (a) Borrower's obligation return the Collateral, (b) Lender's

demand that Borrower return the Collateral, and (c) Borrower's failure to make payment to Lender therefor.

62. The Collateral has been intentionally and wrongfully converted and detained by Borrower.

63. As a result of the failure of Borrower to surrender the Collateral and its continued illegal usage and wrongful conversion of the Collateral, Borrower has converted the Collateral to Borrower's own use.

64. The reasonable value of the Equipment if repossessed and sold is $37,500.

65. The reasonable value of the other collateral shall be determined by the Court at the trial in this matter.

66. Accordingly, Lender is entitled to a judgment requiring Borrower to surrender the Collateral and to a money judgment against Borrower in an amount to be determined at trial.

## COUNT V
## UNJUST ENRICHMENT

67. Lender refers to and re-alleges each of the foregoing allegations of this Verified Complaint as if more fully set forth herein.

68. Upon information and belief, Borrower continues to use the Collateral in its businesses despite the Defaults and its lack of any right to possess or use same.

69. Upon information and belief, Borrower has realized revenues from its illegal possession and use of the Collateral, and has been unjustly enriched in the amount of the value of the Collateral and any income Borrower realized or received due to its illegal possession of same.

70. Accordingly, Lender is entitled to a money judgment against Borrower in an amount to be determined at trial.

## COUNT VI
## MONEY LENT

71. Lender refers to and re-alleges each of the foregoing allegations of this Verified Complaint as if more fully set forth herein.

72. Pursuant to the Loan Agreement and the Note, Lender lent Borrower $5,000,000.00 at Borrower's request.

73. The Loan was to be repaid, with interest, at the rate of 2.9949% a year until default and the lesser of twelve percent (12%) a year and the maximum amount permitted by law after default. (Exh. 2 at § 2(a), pp. 2-3 and Exh. 1 at § 11(a)(8), p. 4.)

74. Borrower has failed to repay the principal amount of $2,759,537.16 (as of January 20, 2023), the prepayment penalty of $27,595.37 and has not repaid interest totaling $109,830.52.

75. As of January 20, 2023, the total outstanding and payable to Lender, including principal, prepayment penalties and interest, but excluding attorneys' fees and costs was $2,919,665.74.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Banc of America Leasing & Capital, LLC respectfully prays that this Court enter judgment in its favor and grant the following relief:

a. a money judgment against Defendant Scalable Labs, as the successor by merger of ooShirts Inc., on the Loan Agreement and the Note in the amount established by Plaintiff, including but not limited to all principal, interest, default interest (from and after October 6, 2022, the date of the Acceleration and Demand Letter)*,* pre-payment penalties, termination fees, late charges, contractual costs, attorneys' fees and all other charges;

b. foreclosing Defendant's interest in the Collateral;

13

279470027v.1

    c. possession of the Collateral or, if any of the Collateral cannot be delivered, for entry of a money judgment against Defendant Scalable Labs for the value of the undelivered Collateral in the amount to be established by Plaintiff;

    d. damages for wrongful detention of the Collateral in the amount to be established by Plaintiff;

    e. damages for depreciation of the Collateral in the amount to be established by Plaintiff;

    f. exemplary and punitive damages in the amount to be determined by the Court;

    g. holding Defendant liable for its unlawful conduct, including but not limited to its wrongful conversion and detention of the Equipment and its unjust enrichment from the use of the Equipment;

    h. punitive damages for the Counts asserted, as appropriate;

    i. all costs and expenses of this action, including reasonable attorneys' fees; and

    j. such further relief as the Court may deem just, necessary, and proper.

Dated: January 26, 2023

    /s/Michael A. Kreppein
Michael A. Kreppein, 22430-64
WILSON, ELSER, MOSKOWITZ,
EDELMAN & DICKER LLP
233 E. 84th Drive – Park Tower, Suite 201
Merrillville, IN 46410
Telephone: (219) 525-0560
Michael.Kreppein@wilsonelser.com
*Attorneys for Plaintiff,*
*BANC OF AMERICA LEASING & CAPITAL, LLC*

## VERIFICATION

RAYMOND E. RATLIFF, of full age, declares as follows:

1. I am a Senior Vice President and SAG Portfolio Manager for Banc of America Leasing & Capital LLC ("*Lender*"), plaintiff in this action. I am in charge of Lender's loans to Scalable Labs Inc. ("*Borrower*"). As a result, I am fully familiar with the facts of this case with respect to Lender's loan to Borrower. I am authorized to execute this Verification on behalf of Lender.

2. I have read the foregoing Verified Complaint and all the allegations contained therein. Except as to allegations made upon information and belief, which allegations I believe to be true, all the allegations in the Verified Complaint are true based on my personal knowledge, from public records, the records of Lender or information provided to Lender by members, employees and agents of Borrower. If called on to testify, I would competently testify as to the matters stated therein.

I declare under penalty of perjury, under the laws of the United States of America, the State of Indiana, and the State of Illinois, that the factual statements made in this Verified Complaint are true and correct.

Executed at Chicago, Illinois on January 20, 2023.

*[signature]*
RAYMOND E. RATLIFF
On behalf of Plaintiff, *Banc of America Leasing & Capital LLC*

15

278567633v.3